20-2976 Benezet Consulting and Trenton Pool Carol Love, the Commonwealth of Pennsylvania. Mr. Rossi, good morning. Yes, thank you, Robert. Mr. Rossi, if I could ask you to start with the argument Council's making that you waived. I'm sorry, excuse me? Yeah, if I could ask you to start with the argument of waiver. Go ahead. I'll answer your question. I don't understand your question. Well, what's the issue as you see it before us? The issue is simply we prevailed on the merits. The plaintiff prevailed on the merits of the case that, as in all other cases like this across the country, that blanket bans on out-of-state circulators are unconstitutional. They impose a severe burden. You want to expand the relief. Yeah, we are here only for purposes of relief. And with respect to relief, we didn't waive anything with respect. We specifically requested in our complaint permanent injunctive relief. Now, permanent injunctive relief is not simply limited to facial relief. Here, under strict scrutiny analysis, the state, because the ban limits the pool of available circulators, it imposes severe burdens on First Amendment speech that triggers strict scrutiny. And under strict scrutiny, the challenge or restriction can only survive if it's narrowly tailored to advance a compelling governmental interest. Now, we agree that the state has a compelling governmental interest to police against petition fraud. But every district court to consider it has decided that petition fraud is more narrowly protected by requiring out-of-state circulators to submit to the jurisdiction of the Commonwealth for purposes of any kind of post-filing investigation and or prosecution. So in this case, the relief that should have been granted is permanent injunctive relief and joining the statute for purposes of requiring, joining the statute to the extent that out-of-state circulators are willing to submit to the jurisdiction of the Commonwealth. So that's the only issue before this. That was not, this was not brought as a class action. Oh, no, no, absolutely not. And the evidence before the district court basically just dealt with the situation of Benazir and Mr. Whatever his name was. Trenton Poole. Trenton Poole. And not about the many other organizations or companies or individuals in the state of Pennsylvania who are looking to get votes, whether they're citizens of Pennsylvania or citizens of other states or citizens of foreign countries or whoever they are. So that, are you saying that it should have been a facial remedy? Because I just don't see how you have the facts before the court for a facial remedy. Every court case, every district court case that have decided these state bans, bans on out-of-state circulators have always been brought by single, by individual plaintiffs. They are never brought as class action. And the relief is that this statute is not narrowly tailored to advance the state's interest. But the district court used an as-applied matrix here, right? Correct. And I agree with the as-applied matrix, Your Honor, because, because, Because how can you expand the playing field, so to speak, from as-applied when you have very specific factual findings as to the folks in front of the court to a facial challenge which would encompass the folks that Judge Roth referenced? Because the statute is, the statute as written is not narrowly tailored to advance, to advance the interest. If the injunction were extended to apply to you after the 2020, then you have full relief, don't you? And it's consistent with the language of Rule 69. Correct. Well, Your Honor, let's take, first things first. I represent a plaintiff. I represent a client. My client, after litigating this for four years, wants permanent relief, at least as to him. Now. Right. So if he gets that. If he gets that, we're fine. That's all we're asking for. And there was two. Were you asking for more than that? No, we're not asking for more than that. You were asking for everybody to be included. The reality is, the reality is, the reality is that these laws are always struck down as unconstitutional. And I think, let me go back to what happened in Green Party versus H.O. That was the first case, and I brought the case. The same restriction was imposed on third parties, libertarians, greens. They couldn't use out-of-state circulators because they had to be registered voters in the state. Judge Dulzell found that unconstitutional and joined enforcement of the statute as apply these plaintiffs. And then the Secretary of State's office said, okay, we give up. The Libertarian Party, even independent candidates that weren't members, that weren't part of the litigation, they also don't have to, they also can now use out-of-state circulators. The Secretary said that, but the Green Party opinion was limited just to the persons who are plaintiffs in that case. Correct. And, Your Honor, that's true. Other courts have also, across the country, when they strike down these out-of-state bans, essentially provide relief that, you know, and all similarly situated plaintiffs. Now, in this case, all I want, as an initial matter, is that my plaintiffs don't have to litigate this every four years. Okay. That's the relief you guys grant? That's a very different thing. Pardon me? That's a very different thing. Okay. We didn't get that at the district court. That's what we want, first of all. Now, step two. Just to be clear, all you're asking for is that Mr. Poole. Mr. Poole and Benazit Consulting. Benazit Consulting. Correct. Yeah. Going forward. They get the relief going forward. They get the relief forever. Right. I mean, and, yeah. Now, there's also. Provided they are willing to sign it, that they will submit to the jurisdiction of the Commonwealth. We happen to believe that if it's extended beyond 2020, we believe the Secretary will recognize the futility of litigating these for every single out-of-state circulator in the country, because that's going to be massive litigation, which we're prepared to bring if we have to, because I have clients who are saying, do we have to? Can we? Can we not? And I say, well, right now, we're going to have to litigate this. I'm holding off that litigation until this court rules and give the Secretary time to capitulate on everybody else. But there is another issue here. Carol Love is a Republican voter who wants to receive the speech of these out-of-state circulators. So every registered Republican and Democrat ought to have the right to receive the speech of these out-of-state circulators willing to submit to the jurisdiction of the Commonwealth. And that should also be considered in the relief that is granted here, because their First Amendment rights are impaired as well here, not just the circulator's. The suit wasn't structured that way. It wasn't structured as a class action. It could have been, but it wasn't. Well, but none of these valid access cases are ever class actions. I don't know. I don't know of one, Your Honor.  Maybe they ought to be a class action. Well, I have now 600 circulators from California, Florida, and Texas who are about to do that. So maybe that will be a class action. They're all coming to Pennsylvania? Yes, they do. Well, yes, they do. They travel. God bless them. I wouldn't want to do this work. But they travel the country. They make quite a lot of money doing this. And it is also a way to advance their First Amendment. They believe in their clients. They believe in valid access. I'm just sort of mystified as to why anybody would want us to have to bring another case on the same issue, especially when this isn't a close case. These bans have been dropping across the country unanimously, both by district courts and circuit courts. And we're just looking for the relief here, which will put this litigation to an end here. Look, if this stands, it's like an annuity for me as an attorney. But I have to represent the interest of my client, which is we litigated this for four years. Do you really have to go into court probably tomorrow to get relief for 2024? It's a very, very big of you. Pardon me? It's really, really a very, very big of you. Well. Sacrificing all of that money for the good of the judiciary. Well, I have. We all have. We all have ethical obligations. It's a class action. Well, the next case, I guess, will be that big. Maybe it should be called a class action. I'm not – class action, even for me as an attorney, I'm scared. That's a big deal. So maybe I'm not the attorney to bring the class action. Well, it's the same big bucks. Big deals pay big bucks. Yeah, but it's a lot of money, too. Well, we've got to make sure that all these people working in Pennsylvania go to Altoona while they're here. They've got to go to Altoona. Yeah. But also, in looking at this, Your Honors, I would encourage you to also look at Carol Love and all the – and remember, in First Amendment cases, they represent people who are not before the court as well. So it is almost – I think that's why the class actions aren't brought, because in First Amendment cases, the plaintiffs stand in the shoes of everybody else whose First Amendment speech is being impaired, not just the plaintiffs before the court. What relief did the district court give Ms. Love? Nothing. I mean, the district court practically ignored her. I mean, I think the district court focused in – and I don't mean to be critical of the district court here on that, because the people that were being – really pushing this are the circulators. Carol Love is simply a tag-along plaintiff who legitimately wanted to sign a petition and couldn't because Trent wasn't allowed to do it because he was an out-of-state circulator, and we did not get the preliminary injunctive relief that requested at the beginning of this litigation. So – Did she ultimately sign a petition? She couldn't. No. I mean, no circulator came to her door, and she was not able to sign a petition because of this ban. So her First Amendment rights were impaired as well, not just that of the circulators. I'm at a red light. But you could also – Oh. The rules of civil procedure specifically prohibit injunctions from being, quote, broader than necessary to provide full relief to the aggrieved. So, again, if the injunction here is broadened to the plaintiffs in this case to limit – so the limit to 2020 is taken off, and it is for all future elections in Pennsylvania where plaintiffs are willing to subject the jurisdiction of Pennsylvania, that really gives you all the relief that the civil procedure allows. I absolutely agree, Your Honor. And I think if you give that relief, other things – other dominoes will fall pretty quickly. But I can't speak for the state, and I don't mean to in front of this Court. But in Asia – Would that satisfy Ms. Love's concerns? Pardon me? Would that satisfy Ms. Love's concerns? It wouldn't. It would. It would not. It would not. It would not because that would then depend – her right to receive speech from out-of-state circulators willing to submit to the jurisdiction of the Commonwealth would still depend on them litigating the issue. Correct? But she is right now hooked up just with Benazir. Correct. No, she supported – in 2016, she supported the candidate that Benazir was circulating for. So that's why she specifically wanted to sign that petition. In the future, I can't speak to which candidate she wants to support or which circulators would support her. He has chosen this particular litigation. Correct, to advance her personal interest. And I would also – I would quickly remind the Court that professional circulators are really good at what they do, and there aren't really many in Pennsylvania because we are not an initiative referendum state. That's why most of them come from California, Texas, Florida, Oregon. That's why this ban is uniquely punitive and severe because only the bad circulators are here in Pennsylvania. And I litigated a case – my co-counsel, we saw the fraud committed by Pennsylvania circulators in the libertarian case back in 2004. That's why if you want – well, I'll shut up. I'm not – it's important that out-of-state circulators be allowed to come into Pennsylvania because the best ones don't reside here. Got it. I'll shut up. I won't beat the dead horse. Okay. Good morning, Mr. Sorrell. Good morning, Your Honor. Does the Commonwealth of Pennsylvania see the handwriting on the wall? Does – I think if what you're asking is whether the Commonwealth expects the judgment to be reversed, no, I don't think so. What about going forward? Well, we actually talked about that. Can you speak up a little louder? I'm sorry. Is this movable? No, I don't think so. We're getting total with this. No, it's not. I'll do my best. I always have this problem, and I apologize. Counsel suggested to us that what he's looking for here is that the particular plaintiffs in this case, if they get relief going forward, that's all he's asking for. Are you opposing that? Assuming his clients conform to the laws of Pennsylvania. Well, I was actually kind of surprised to hear that because repeatedly in this case, including as recently as the oral argument summary that the court requires before we come in like this, the statement was made that they seek relief for all out-of-state circulation. But now that you've heard it, you're content, I assume, with what he's requesting. Simply extend the relief to things here. No, I can't go quite that far. And the reason I say that, and this is captured in the district court's decision, is that things do change. Mr. Rossi is assuming that these individual circulators, particularly Mr. Poole, will come back and want to do the exact same thing that happened before, and he'll be reachable and responsive four years from now under potentially different circumstances. The district court had a fully developed record that explained why you can't go beyond, or why I should say the court exercised its discretion not to go beyond the immediate parties under the immediate circumstances that were presented. Well, under those circumstances, help me with that. The circumstances are that the immediate parties agreed to submit to the jurisdiction of Pennsylvania. They agreed at that point, just those two. And if we so ordered, in determining this case, we wrote a decision saying, yes, we will permit them to go forward as long as they agree to submit to the jurisdiction of the Commonwealth of Pennsylvania and the other conditions which they have agreed to at this point. In other words, it would be the same control over them that the Commonwealth of Pennsylvania has now, that rather than have to go do this over and over again, we will say let them do it in the future under the same conditions. What's the matter with that? Mr. Poole only. I understand what you're getting at. It doesn't seem that unlikely that Mr. Poole will do anything different in the future, but we can't tell. The sky may fall in tomorrow. We can't tell. I mean, there's certain things you've got to do to move life forward. But the problem here is that the facial challenge for the State was, excuse me, summary judgment for the State was granted, and that's not in contention. That was count one of the complaint. Count two of the complaint. The as-applied challenge was properly adjudicated, to use the appellant's own words, except for the remedy. And the remedy they have come into this court and briefed and argued, as opposed to what they said this morning, is an expansive, very broad ruling, not just for the named plaintiffs, but for all other circulators. And in reading their argument, in fact, it occurred to me that they're asking for too much, but there is a reduced thing they're asking for, which might be possible, that might be workable, that would permit them to go forward under the same conditions as they are presenting the petition now, that they submit to the jurisdiction of the Commonwealth of Pennsylvania. And the fact that they are asking for more doesn't mean we can't give less, and if we should decide to give that less, what is the problem that the Commonwealth of Pennsylvania sees in such a remedy? Well, I'll try to explain as well as I can. This is an appeal from the denial of Rule 59 relief, and the injunction in question was deliberately and consciously tailored by the district court for all the reasons that are explained in the memorandum. And this court is reviewing for abuse of discretion whether that ruling by the district court was appropriate under the circumstances. Okay. And we could find it is an abuse of discretion because although it is giving an immediate relief, that it is an ongoing problem that we can see from the arguments and from the facts will persist, and that if the plaintiffs agree to the same conditions and restrictions in the future, that they should be permitted to go forward in that manner rather than burdening the court with coming into us every six months or two years or four years to relitigate a matter that is beyond dispute. Well, nobody wants to relitigate constantly. I think that's fair to say. I think if there were another cycle coming up. Well, there is. Well, of course there is. I agree. I don't mean to suggest that there won't be more elections, but the immediate involvement of Benezet Consulting and Mr. Poole remains to be seen. Mr. Rossi stands here and says that they'll be back, but that is not guaranteed or it hasn't happened yet. If it gets to where there is another election and another need to do circulation, there might be a potential to negotiate something then and say. Judge Roth's hypothetical would be restricted to Rossi and the consulting group, right? So. I'm sorry, I didn't hear everything you just said. The relief going forward that I think Judge Roth was referencing was restricted to Poole and the consulting, Benezet. Not everybody else. Right. Just to those two entities. But. That's what counsel is asking for. But what I would hesitate about is that Mr. Poole is just one person, but Benezet calls itself a consulting company and seems to be saying that they have all sorts of other people involved, and they go all over the country and do whatever they do to gather signatures. What will happen in the future time when they're doing that again that makes the state able to disregard the black and white words of a statute and say, oh, okay. So you're okay with Poole? Are you okay with Poole? Mr. Poole himself? Yeah. Well, that's the toughest part to say, because if he stands in an open court and says, I swear, you know, I will always come back, that would be hard to refute. He has to sign, and if he doesn't sign them saying he'll submit to the jurisdiction of Pennsylvania, then he's out of luck. But obviously it's a First Amendment claim, so the relief has to be narrowly tailored. Yes. Maybe we can focus it on that. And it strikes me that the relief as it stands now is not narrowly tailored. It could be narrowly tailored by extending it, still limiting it to these plaintiffs, by extending it into the future. But that would be a prospective injunction into the future that goes way beyond what was actually at stake during the litigation. Well, it's not what they asked for. No, that's a good point. Into the future. They asked for into the future. I mean, I know that because I looked at the complaint last night to see were they just asking for this election or were they asking into the future? And they ask into the future coming back the same organization, the same parties, and an order of this court can be restricted to these parties that in the future, if they agree to the same conditions that they have agreed to now, should they be permitted to come back as they have asked to do? And it seems to me that if they have to come back and litigate this issue every time, they're going to win. It's a waste of our time. It's a waste of your time. Isn't it a way to solve the case, which we could do in a decision by saying, yes, we extend this into future because it was an abuse of discretion for the district court, having been asked for that relief, not to grant it. And we find that as a matter of First Amendment relief, they're entitled to it. And they should be entitled to it under similar circumstances, the same parties in the future. And can't the Commonwealth of Pennsylvania help us save all this time and litigation by saying, yes, we agree that that the statute has problems and ought to be revised and that we are going to not oppose permitting these parties before us under the same circumstances to continue their First Amendment activities in the Commonwealth of Pennsylvania with the same conditions and restrictions that they agree to today? Judge Ross, you may have just dictated the opinion. If that's the opinion, needless to say, the Commonwealth will honor the Third Circuit's words no matter what they turn out to be. I think the hesitation has been that the statute is the statute. And although Mr. Rossi has discussed in extravagant terms the body of law that exists, there isn't any single case that I could find that he cited or otherwise that goes as far as he wants this litigation to go. And as far as he asked this court to go in this case until today, when he suddenly backtracked and said, if you would just do for Mr. Poole and the appellants themselves, we'd be fine. That was never, ever said. It is contradictory. It's not consistent with the brief. Let's take him at his word. And if that's where we are, then I sense in a way you don't have any problem with that. I'm sensing that your reservation is you're not seriously going to honor that statement. And I'm saying you can do that by just having folks sign off on an affidavit, whatever you want to promulgate for them to sign before entering the Commonwealth. The deal of Biden has lost the Commonwealth. He's subject to his jurisdiction. Everybody's happy except for Mr. Rossi, who won't become a billionaire. Well, I understand that. But it also doesn't solve the problem that they claim to want to solve for everybody, even though they didn't bring a lawsuit on behalf of everybody, as you pointed out a couple of times, Judge McKee. That's his problem. That's his problem. That's not your problem. No, I understand that. And there is a whole lot of difference between just Mr. Poole and the case that has been litigated up until now. I can't deny that. But that's not the case that's been litigated up to now. And that's not the impartialness being repeated. It is a part of the case that has been litigated up to now. And it is a part of the case that to me seemed obvious, frankly. Me too. Well, the only phrase in the final order that's under review, as I understand what the court is telling us now, is the part about the 2020 election. And that assumes that everything else will be exactly the same in the future, which is really hard to be sure of. But you can think that. If, in fact, everything is the same other than it's a new election, I understand why you're saying then we don't have to have a full-blown lawsuit that stretches out with 12 counts or whatever there were in this complaint and hearings and arguments and discovery and everything else. And Mr. Rossi will have to consider other areas of the law perhaps, but that is how we deal with the future. Well, Mr. Rossi may have other fish to fry somewhere else, but I'm concerned about the Pennsylvania election officials have to administer the elections for this litigant and anyone else that might or might not appear. And there is absolutely no way that this decision can be interpreted as granting relief to all paid circulators, et cetera, et cetera, as has been argued in the brief, the statement of issues. Until about 10 minutes ago. Until about 10 minutes ago. And if the case had been litigated differently, we probably wouldn't be here. But we were dealing with a much more extravagant, far-reaching attempt to change everything, to make Pennsylvania into the poster child for paid circulators to come and have free reign. And that is not what the law necessarily requires. As a matter of fact, even the Benezet decision itself, the Commonwealth Court declined to follow in a more recent case, which was entered into the record at our alter amends stage and you have it available to you. So it's not as clear cut as Mr. Rossi would suggest as far as the body of law is concerned. But these two people have the benefit. One way to look at it might be that these two people have litigated an excuse me, these two parties have litigated an issue. And if anything came up as far as them in the future, they would be able to say, wait a second. We have a kind of a preclusion argument here. You can't hold us to this because we've already gotten a final judgment in our favor up to this narrow point. But that's all they got. And I am insistent that that's the most that they got. And the additional grandiose overturning of the injunction that was entered is not warranted on the law. Thank you. I didn't actually ask. I had asked for rebuttal. I didn't actually do it. Thank you. I appreciate that. I didn't know if I had my full 15 minutes. Judge Roth, you're exactly correct. The remedy is appellees talk about, well, things might change in the future. Well, the fact is you either submit to the jurisdiction of the Commonwealth or you don't. If you don't submit to the jurisdiction of the Commonwealth, if you don't sign the paper, you don't get to circulate in Pennsylvania. So that takes care of their whole argument that who knows what's going to happen in the future. Because the remedy for Poole and Benezet and hopefully everybody else, because hopefully they will change it for everybody else, just like they did after Green Party Pennsylvania versus HL. Let me ask you. I get the Poole piece. Yeah. It's pretty straightforward. It's Mr. Poole. Benezet's a little more troubling. That's his firm, and he hires a circulator. Benezet is owned by Poole? Yes, correct. That's his. One man corporation, right? It is, and they all are. I mean, even the big ones like Edie Baggett, who circulated for Trump, who has 400 circulators under her. It's her firm. So you're not going to have Benezet coming in with an umbrella? Yes, we are. Absolutely. It's not just a one-man show. The remedy is for Poole and Benezet Consulting. And Benezet Consulting, anyone who is hired, who is an independent contractor for Benezet Consulting, is covered by this opinion as well, by this remedy, because they're plaintiffs. I understand. So I just want to say the structure here. So Benezet can hire 100 people. Yeah, they're people, and they have their people. As long as anybody operating under their banner agrees to comply with the Pennsylvania law, they would be allowed to circulate. Correct. And by the way, I did in my arguments complain about the limit of the 2020 election as well. This has not just been brought up today at oral argument as a less grandiose remedy. I mean, my beef all along has been that this was limited to 2020, which literally is, after four years of litigation, is not much, if any, real remedy at all. That's why in my briefing I do talk about extending it further. But with respect to it applying to all out-of-state circulators willing to submit their jurisdiction to the Commonwealth, that was pretty much based on my prior experience in Green Party of Pennsylvania v. H.O., where we got the as-applied relief, permanent as-applied relief to the plaintiffs, and the Secretary of State Office properly decided that, well, we're not going to bifurcate between the Green Party and the Libertarian Party and the Constitutional Party. Everybody gets the relief, including independent candidates in the future. They changed the jurat for everybody. We're expecting the same thing to happen here today if this opinion comes down. Would that satisfy Ms. Love? Yes, it would, because if they change their jurat and anybody – Well, not if they change it. If we granted the relief you're asking for today. Correct. Right? So if we extend the injunction going forward to Poole and his company, does that satisfy Ms. Love? It doesn't satisfy Ms. Love because somebody else who is not Benezit is circling for another candidate, and her First Amendment right is at stake here as well. So she's asking for more then? Yeah, absolutely. She needs more then. But by joining in what Benezit – has she filed a separate complaint? Has she filed an amended complaint? Or is she simply following along and asking for what Benezit is asking for? Well, she's asking for the same thing as Benezit, and I think the assumption was that any permanent injunctive relief would apply to everybody. She's asking for the statute to be reversed. Only as applied to out-of-state circulators willing to submit to the jurisdiction. If an out-of-state circulator doesn't want to submit to the jurisdiction, the law is fine then. But she's out there kind of on an island. Yeah. But if we grant her relief, it would be a facial challenge to the statute. No, it's not. Wouldn't we grant her relief only as applied considering the relief that Benezit is asking for? Correct. Yes, sir. Because in joining Benezit's action, although she is asking for more, she is in essence saying, I want to get what Benezit gets. Correct. Because then she can hopefully sign any circulator who is submitted to the jurisdiction of the Commonwealth. They would be able to come to her door, do you want to sign for this candidate? Yes, I do, and I'll sign. Now, the reality here is if they don't extend it to everybody, then we'll be back in court. I'll be bringing these 600-some-plus plaintiffs to court to get the relief for them. Hopefully, if we get the permanent relief with respect to these plaintiffs, they will capitulate and you'll never see me again. You represent Ms. Love. Yes, I do. If Ms. Love in this litigation gets the same relief limited to what Benezit gets, is she going to say this is a bad decision or is she going to say I'm happy with what I got, I will look elsewhere to try to expand what I may need in the future? I don't know the answer to that, Your Honor. I mean, you represent her. I represent her. I haven't had that conversation with her because our conversation has always been predicated. Every other court has – her full relief for her requires that any out-of-state circulator who submits to Jurisdiction of the Commonwealth can knock on her door, not just on hers. But we are saying there's not – full relief is invalidating the statute for her. Not – but only as applied to out-of-state circulators willing to submit to the Jurisdiction of the Commonwealth. The statute is not facially invalid because an out-of-state circulator who does not submit to the Jurisdiction of the Commonwealth is properly barred from circulating in Pennsylvania. That's where the as-applied relief comes in. Pardon me, Your Honor? Ms. Love's position. And that also has to be Ms. Love's position. Correct. Yes. So that's – as-applied relief to me, it means that the statute is valid except for out-of-state circulators willing to submit to the Jurisdiction of the Commonwealth because that is a more narrow protection of the state's interests under strict scrutiny analysis. Okay. And we cannot – well, I have indicated my reluctance to expand the relief given to out-of-state circulators beyond Benezette because the record before the district court basically focused on Benezette. And therefore, I would feel justified in giving relief to Benezette but not giving relief to all other out-of-state circulators because the factual basis for that determination was not before the district court. And if you do that, Your Honor, and if that means I have to bring in the second wave of litigation, then we'll cross that bridge when we come to it. Yeah. Now, hopefully, if you do that – It hasn't washed out with climate change. If you do that, we're hoping they capitulate. But that remains to be seen. Part two. Thank you, Your Honors. By the way, thank you for having oral argument in person. I've done these oral arguments across the country by Microsoft teams, and it's just horrible. So thank you for doing the – going the extra mile to have an open oral argument. Thank you. I won't take offense at that. I'll never know, Your Honor. Maybe I just lost the vote. I should have let the dog slide. So thank you. A brilliant litigation move.